## PROGRESSIVE LUMBER CO. v. MARSHALL & E. T. RY. CO.†

(Court of Civil Appeals of Texas. March 30, 1911. Rehearing Denied April 20, 1911.)

1. RAILROADS (§ 484*)—LOSS OF PROPERTY BY FIRE—EVIDENCE—ISSUE.

In an action against a railroad company for loss of property by fire set by an engine, the refusal to submit to the jury the issue of negligence on the theory that the company permitted dry grass to accumulate on its right- of way, and that sparks from the engine set fire thereto and spread to and consumed the property, *held* proper under the evidence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740–1746; Dec. Dig. § 484.*]

2. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR — ERRONEOUS EXCLUSION OF EVIDENCE.

The exclusion of collateral testimony, not throwing any light on the issue, is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4154; Dec. Dig. § 1050.*]

3. RAILROADS (§ 485*) — FIRES — EVIDENCE — INSTRUCTIONS.

Where, in an action against a railroad company for loss of property by fire set by an engine, witnesses testified that the wire netting spark arrester used by the company was the most approved appliance in use by railroad companies for the prevention of the escape of fire, and the master mechanic of another railroad company testified that his road and another had abandoned the wire netting and used a perforated plate instead, but that neither one was better than the other, a charge requiring the company to equip its engine "with one of the most approved spark arresters in use" by railway companies was not erroneous for failing to require it to equip its engine with the most approved spark arrester in use.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1747–1756; Dec. Dig. § 485.*]

Appeal from District Court, Upshur County; R. W. Simpson, Judge.

Action by the Progressive Lumber Company against the Marshall & East Texas Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Mell & Stephens, J. S. Barnwell, William Thompson, Geo. S. Wright, and Sam D. Snodgrass, for appellant. Warren & Briggs and M. B. Templeton, for appellee.

LEVY, J. Appellant's mill plant and planer and machinery and certain other property, situated near the right of way of the railroad company, were destroyed by fire about midday of October 1, 1909. It was the contention of appellant that the fire emanated (1) from sparks negligently emitted from the locomotive of appellee and which fell upon the property, and (2) from fire set out by the locomotive to the dry grass and other combustibles negligently suffered to be upon the right of way, and thence spreading to the property burned. The language of the petition is somewhat indefinite as to charging that the locomotive set out fire to the dry grass on the right of way, but it was intended to cover this particular ground of negligence. The court submitted the case to the jury on the first alleged ground of negligence. The verdict of the jury was in favor of the railway company. No question is made on this finding. Appellant offered a proper special charge, presenting the second ground of averred negligence, but the same was refused by the court. And the refusal to give the special charge mentioned is made the basis of the first assignment. The point is that the evidence required its submission.

[1] Appellant insists that there was sufficient evidence to support a finding that the railway company (1) negligently permitted dry grass to grow and accumulate on and incumber its right of way and track at a point west of the dry shed or planer shed, and (2) that sparks of fire were emitted from one of the appellee's locomotives, and (3) set fire to said dry grass, and (4) the fire spread to and consumed appellant's property. And the special charge was predicated on such proof being made.

The main line of the railway ran almost north and south by the property of appellant. A spur track, almost parallel with the main line, ran along the full length of the planing shed and dry shed. The property was about 50 feet east of the main line, and there was about 45 feet between the spur track and the main line. The dry shed joined the planer shed on the north, and was 40x100 feet, and the planing-mill shed was 40x60 feet. These sheds were covered, but not inclosed by walls. The floor of the planing shed was four feet from the ground, and the machinery was situated under the floor. A platform ran practically around the dry shed and planer shed. The spur track comes from the main line track about 150 feet north of the north end of the dry shed, and runs along by the platform about 12 inches west of the same, and just enough distant so that cars do not touch the platform. The spur ends at the south end of the platform. There were three box cars standing on the south end of the spur. The filing room was located in the edge of the dry shed, next to the planing shed. It is not questioned in the record that appellant's property was burned.

The origin of the fire rests entirely in circumstantial evidence. No one was at the mill at the very time the fire started to burn

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

the property. It was the appellee's contention that the fire originated from the boiler and engine room of appellant, and there was evidence offered, though conflicting, sufficient to authorize the jury to infer that it originated from coals of fire left in a zinc tub where Babbitt metal was recently melted. It was the contention of appellant that the fire originated from sparks from appellee's locomotive No. 59. Appellant offered proof that this locomotive passed opposite the property about 15 minutes before the fire started. And there was evidence, though conflicting, warranting the jury to conclude that this locomotive was negligently permitted to emit sparks of fire. There was no proof that sparks of fire were seen to come from the locomotive and fall on the property. The court submitted this phase to the jury, and same is not here complained of.

An employé of appellant first discovered that the plant was afire, and at the time he discovered it he was at his home, which was between 150 and 200 yards north of the planer. From his house he first located smoke and fire, and it was about where the filing room was situated. He hastened down to the mill, and when he got there he went into the building at the north end of the planer, and thence to the north end of the dry shed and onto the platform. As he was walking on the platform, he discovered he could not proceed on the platform on account of the smoke and fire, so he turned back and went to the north end and around to the east side of the shed, and started down the east side of the shed. The smoke and fire prevented him. The fire seemed to be in the west side of the shed at a point opposite the three box cars. The witness could not state whether it was underneath or up in the shed. According to the evidence the fire at this time was well under way, and so hot that the employé could not make it to a hydrant near by to turn on water. Other witnesses, arriving very soon after this employé got there, locate the fire as burning at the time at the same place; that is, at a point in the shed, either underneath or up in the shed, opposite the box cars on the spur, and near the filing room.

There is evidence that there was grass, and that it was dry, on the dump of the main line of the railroad. But as between the spur track and the main line it was shown by undisputed evidence that there was a dirt road used for hauling lumber, which came in between the two tracks north of the planer, passed along between the two tracks and adjacent to the main line, and passed around the south end of the spur and around the mill. Along this road it was shown that there was no grass, as it was too much used for grass to grow at all. There was no grass in the ditch or bar pit at the end of the spur track.

The planer foreman testified, and it was undisputed, that there was no grass between the spur track and the planer shed, and there was no rubbish in there, and that there was no grass under the planer shed. It, as he said, had all been cleaned out about a week before. He did say that there was grass on the west side and up the spur track.

The witness Richardson said, "There was a little grass and some small weeds" between the main line and the spur track. But, as he says, "there was not much high weeds and grass growing in there between those two tracks at that time; there was a little grass and some small weeds," and the grass was from an inch and one-half to three inches long. He further states that the grass between the tracks was "little spots of grass in there. There would be a little speck of grass, then a clean place, then the road; some places would burn."

The roadmaster testified that about a week or 10 days before the fire they had cut the grass on the spur track, and had cleaned along by the planer spur track as far as the end of the spur track. He did not claim to have cut the grass on the main line. And there is some evidence that the ties had some grass between them. No witness testified to seeing any spark or fire come from the locomotive to the grass, or that the grass was on fire before the property was discovered to be burning.

From the evidence it appears that all the grass there was burned. But whether fire was communicated to it from the burning plant or from the engine the witnesses did not know. If it is shown there was considerable dry grass on the main line, it is also shown that between the private lumber road and the spur track, and the spur track and the planer shed it was not there to any appreciable extent. So, under the circumstances, in order to say that the locomotive set out fire, it would have to be presumed from the circumstance that it had previously done so. But this presumption could not be made the basis of another presumption that the fire set out fell in the grass.

Nor could the further presumption be indulged on this presumption that the burning grass spread to the appellant's property. The grass was not seen afire until after the house was on fire, and the location of the fire was a fact going to negative any presumption that the grass caught first. It was located as being either in or underneath the planer shed. If in the shed or underneath, under the circumstances the grass could not have originated the fire. The floor of the shed at this point was four feet from the ground. And it is undisputed that all the grass and rubbish between the spur track and the planer and under the side of the planer had previously been cleaned off, and there was none there at that time.

If from the presumption that the engine set out fire it could be further presumed

that the spark fell in the grass on the main line, and the grass caught fire, there remains the physical fact that from the private lumber road to the spur track there were only little spots of grass incapable of spreading fire to the property burned.

After a careful consideration of the record, we have concluded that the case was properly submitted to the jury upon the only issue made by the evidence, and that the evidence does not raise the issue of negligently allowing fire to escape from the right of way.

[2] The second assignment relates to an exception to evidence. The witness Hogg was asked, "What did Mr. Tiefteller say he was going to do with the lumber?" and the objection to the answer was sustained. The answer would have been: "He said he was going to take the lumber away." What the objection to the evidence was does not appear, and the purpose of the evidence does not appear. It was simply collateral testimony, and it does not tend to throw any light on the origin of the fire or appellee's liability, and its exclusion was harmless.

[3] The court charged the jury that: "If you believe from the evidence that the defendant had used ordinary care to equip its engine with one of the most approved spark arresters in use by railway companies, and that it had used ordinary care to keep the same in repair, and that the engineer in charge of said engine used ordinary care in operating the same to prevent the escape of fire, then you will find for defendant, even if you believe from the evidence that sparks of fire escaped from said engine and set fire to said property and thereby destroyed it." The criticism of the charge is that it should have required the appellee to equip the engine with "the most approved spark arresters in use," instead of "one of the most approved spark arresters in use."

It is the contention of appellant that under the facts of this case the jury might find that there were two spark arresters in general use by railway companies, and that the evidence was conflicting as to which was the better or the most approved, and therefore the charge was error. Undoubtedly the case of Railway Co. v. Carter, 95 Tex. 461, 68 S. W. 159, would rule the question as error, if the facts show such issue. But we think the testimony of all the witnesses was to the effect that the wire netting used by appellee, installed in the manner it was in the engine, is the most approved appliance in use by railway companies for the prevention of the escape of fire. It is true that the master mechanic of the Missouri, Kansas & Texas Railway Company of Texas testified that his road and the Southern Pacific had for certain expeditious reasons abandoned the wire mesh and used a perforated plate instead, but he also states, and gave as

his opinion, that for the prevention of sparks getting through they are about the same, and that neither one was better than the other for the purpose of preventing the escape of fire.

The judgment was ordered affirmed.